UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIAM HAMPTON STEWART, JR. | CIVIL ACTION |
| VERSUS | NO: |
| MARK E. JENSEN, DDS, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA AND SLIDELL DENTAL ASSOCIATES, LLC D/B/A LOUISIANA DENTAL CENTER | JUDGE: |
| | MAGISTRATE: |
| | JURY TRIAL REQUESTED |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT FOR DAMAGES

TO THE HONORABLE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA AND THE JUDGES THEREOF:

The Complaint of William Hampton Stewart, a person of majority age, with respect represents:

1.

Plaintiff, William Hampton Stewart, Jr. ("Stewart") was, at all relevant times, of full age and is a resident and citizen of the State of Mississippi.

2.

Made defendant herein is Mark E. Jensen, DDS ("Jensen"), upon information and belief, a person of the full age of majority, a licensed dentist by the State of Louisiana, who was practicing dentistry in Louisiana at all relevant times, and is a resident and citizen of the State of Tennessee.

3.

Made defendant herein is National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), a citizen of the states of Pennsylvania, New York and Tennessee, doing business within the jurisdiction of this Court, which provides a policy of liability insurance to defendant, Mark E. Jensen, DDS, covering the matters sued upon herein, and said defendant is directly liable to plaintiff, pursuant to the provisions of the Louisiana Direct Action Statute.

4.

Made defendant herein is Slidell Dental Associates, LLC d/b/a Louisiana Dental Center ("LDC"), a Louisiana citizen, which, at all relevant times, owned and operated a dental clinic at 1301 Eastridge Drive, Slidell, Louisiana 70458.

5.

On September 26, 2013, Stewart presented to LDC and saw Jensen for the first time for a complete oral evaluation and a cracked right upper front tooth.

6.

At the initial visit, Jensen obtained a Panorex, which showed little or no alveolar bone loss.

7.

Jensen discussed potential treatment options for Stewart's dental condition.

8.

Stewart returned on December 10, 2013, at which time Jensen and Stewart revisited treatment options, including performing implant and an implant crown, extracting all maxillary teeth and doing a permanent denture or placing 2 implants and a removable denture.

9.

On December 12, 2013, Stewart returned with a decision to move forward with extraction of all upper teeth, placement of 2 implants, and a removable denture.

10.

On December 30, 2013, Jensen performed an extraction of all maxillary teeth and placement of two implants.

11.

Stewart became concerned with the significant swelling to his left cheek and returned to Jensen on January 6, 2014, before his scheduled follow up appointment.

12.

Jensen advised that this was normal swelling and told Stewart to keep packing his face with ice and taking the prescribed medications.

13.

Within a few weeks, Stewart noticed what appeared to him to be stitches inside of his mouth and his cheek, and sharp pieces of bone sticking out of his gums.

14.

He returned to Jensen on March 19, 2014 and Jensen noted "Visual, Patient had bone spicuals on UR." Jensen noted that he attempted to smooth the area.

15.

Over the next several months, Stewart repeatedly returned with problems related to the surgery performed by Jensen and the failure of the denture.

16.

After months of problems and failed treatment from Jensen and LDC, Stewart sought another opinion and consulted Dr. Steven Tomaszewski, DDS, whom he saw for the first time on September 9, 2014.

17.

Tomaszewski noted that Stewart was there for a second opinion following care at Louisiana Dental Center. Tomaszewski noted:

> Initial exam: pt in for 2nd opinion following care @ LA Dental. Chief complaint of pain UL post when wearing ^ overdenture. Explained tx history @ LA Dental with many problems encountered. Doesn't like the denture and may seek legal action due to unsatisfactory outcome. My current assessment is that he has lost vestibular space UL due to attachment of mucosa to crest of ridge. This is making it difficult for him to open and current denture cannot seat while also creating a chronic ulcerative lesion. Overdenture attaches well to location-type abutments with good retention. (Photos taken) There are esthetic issues that could be improved. I advised patient to contact LASBD to file formal complaint and seek further advice regarding taking legal action. Also made referral to O.S. (Dr. Brown) for consult regarding revision of surgery & recommended re-make of overdenture. Pt. said he is speaking with attorney presently and will continue with treatment here because he does not want to go back to LA Dental.

18.

On September 30, 2014, Stewart saw an oral surgeon, Dr. Nathan Brown, for initial evaluation as per Dr. Tomaszewski's referral. Stewart provided a history that he needed an evaluation of his cheek on the left side and left ridge "for damage" that he had 3 "permanent snap in denture" and does not fit because tissue that goes from cheek to gum is "messed up".

19.

He indicated that he did not notice when he was wearing the temporary but states "doctor sewed my check to my gums" which has been going on for a year.

20.

Dr. Brown obtained a Panorex xray and Cone Beam CT. Dr. Brown's initial impression was alveolar atrophy, left sinus perforation, obliterated left vestibule. Dr. Brown explained that Dr. Jensen perforated the left sinus when he removed Stewart's teeth and the perforation was repaired by bringing the tissue over the area from the cheek; he explained the vestibule was virtually obliterated which makes wearing the denture very difficult; he explained that there was virtually no bone present in the upper left quadrant.

21.

Dr. Brown advised of two potential treatment options: (1) vestibuloplasty or (2) a sinus lift with placement of bone, which after healing, would allow placement of additional implants to stabilize a denture.

22.

On October 22, 2014, Dr. Brown met with Stewart to re-discuss treatment options and cost of the treatment for a 2 stage mandibular/maxillary reconstruction.

23.

On November 13, 2014, Dr. Tomaszewski met with Stewart to discuss restorative options once Dr. Brown completed the surgical revision/grafting. Dr. Tomaszewski provided Stewart with 5 estimates for treatment options.

24.

Stewart is now permanently handicapped dentally because the teeth are gone. Reconstructing Mr. Stewart's dentition will be extremely difficult due to the absence of alveolar

bone and having to navigate around the sinus membrane and the left upper quadrant that is just below the oral mucosa with no bony separation in between the oral mucosa and sinus cavity.

25.

Stewart will incur significant expense as described in the records and report of Dr. Brown as well as the estimates provided by Dr. Tomaszewski.

26.

Stewart's prognosis is very poor and he will require forever followup by Dr. Tomaszewski and Dr. Brown.

27.

Jensen deviated from the standard of care in connection with his treatment of Stewart including, but not limited to, the following:

    a.    The treatment plan presented was unacceptable. It is inappropriate to present a treatment plan that is unethical as an option.

    b.    Jensen incorrectly diagnosed the case.

    c.    Jensen did not document the status of the teeth.

    d.    Jensen did not document the operative procedure in detail.

    e.    Jensen did not document the complications during surgery or any communications with the patient.

    f.    Jensen's follow up notes were not consistent with the patient's condition.

    g.    Reckless surgical technique was employed resulting in unnecessary loss of large amounts of alveolar bone and formation of a large oral antral fistula.

    h.    Extremely aggressive and unnecessary alveoloplasty was then employed in an attempt to facilitate repair of this fistula. This resulted in loss of almost 100% of the posterior alveolar bone bilaterally. This alveolar bone is needed to support and stabilize the prosthesis that Stewart was prescribed.

    i.    The buccal mucosal advancement flap was employed to cover up the oral antral communication. This resulted in obliteration of the vestibule making any

      prosthesis that requires tissue support in the upper left quadrant unwearable. Therefore, it never should have been prescribed.

j.     Other methods of oral antra fistula closure could have been employed that likely would not have resulted in obliteration of the vestibule.

k.     An implant-supported overdenture supported by only two implants in the maxilla is a terrible way to reconstruct the maxillary arch. The prognosis for long-term survival of those implants is poor. The maxillary bone is softer and generally less dense than the mandibular bone where two implants can be predictably employed to retain a removable denture prosthesis.

l.     The upper teeth should not have been removed in the first place. Extensive counseling should have been employed regarding the negative sequela that results from tooth loss and the difficulties created by wearing a complete denture.

28.

LDC deviated from the standard of care including, but not limited to, the following:

a.     *Respondeat superior* in connection with the conduct of Jensen.

b.     Failing to exercise reasonable care and due diligence in connection with contracting with Jensen to perform dental services and failing to insure that he had the requisite knowledge and skill to perform the dental services for which he was contracted.

c.     Failing to exercise reasonable care and due diligence in overseeing or reviewing Jensen's work in order to determine that he was providing competent work.

29.

As a result of the foregoing medical negligence by one or both defendants, Stewart has suffered temporary and permanent disfigurement and disability, pain and suffering, emotional distress, loss of enjoyment of life and lifestyle, loss of wages and has incurred medical expenses, all of which will continue.

30.

This matter was considered by a medical review panel on June 1, 2016, and the opinion of the medical review panel was mailed by certified mail as provided by statute on June 3, 2016

and received by plaintiff's counsel on June 6, 2016. A copy of the opinion and oaths is attached as Exhibit "1".

31.

Jurisdiction of plaintiff's claims against defendants is based upon 28 U.S.C.§1332, diversity jurisdiction of this Court, as the amount in controversy for plaintiff substantially exceeds $75,000.00 exclusive of costs and interest, and diversity of citizenship exists between plaintiff and all defendants.

32.

Venue is proper because the acts giving rise to plaintiff's claims occurred in this judicial district.

WHEREFORE, plaintiff, William Hampton Stewart, Jr., prays that this complaint be filed and that the defendants, Mark E. Jensen, DDS, National Union Fire Insurance Company of Pittsburgh, PA and Slidell Dental Associates, LLC d/b/a Louisiana Dental Center, be served and cited to appear and answer same and after all legal delays and due proceedings had, there be judgment herein in favor of plaintiff and against defendants, Mark E. Jensen, DDS, National Union Fire Insurance Company of Pittsburgh, PA and Slidell Dental Associates, LLC d/b/a Louisiana Dental Center, jointly and _in solido_, for such damages as are reasonable and just under the circumstances plus interest from the date that the medical review panel proceeding was initiated, December 4, 2014, until paid, for all costs of these proceedings, for a trial by jury and all general and equitable relief.

Respectfully submitted:

LEWIS, KULLMAN, STERBCOW & ABRAMSON

s/s David A. Abramson
**DAVID A. ABRAMSON (#21435)**
**IAN F. TAYLOR (#33408)**
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Telephone: (504)588-1500
Facsimile: (504)588-1514
abramson@lksalaw.com
itaylor@lksalaw.com
Attorneys for plaintiff

**PLEASE SERVE:**

**MARK E. JENSEN, DDS**
Through the Louisiana Long Arm Statute
Via certified mail return receipt requested to:
361 Cobalt Bay Loop, Apt. 105
Memphis, TN 38103-9052

**NATIONAL UNION FIRE INSURANE COMPANY**
**OF PITTSBURGH, PA**
Through the Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809

And

**SLIDELL DENTAL ASSOCIATES D/B/A**
**LOUISIANA DENTAL CENTER**
Through its registered agent for service of process:
Joseph R. Lacoste, Jr.
600 N. Highway 190, Suite 200
Covington, LA 70443